662 S.E.2d 599

**SONOCO PRODUCTS COMPANY, Respondent,**

v.

**SOUTH CAROLINA DEPARTMENT OF REVENUE, Appellant.**

No. 26502.

Supreme Court of South Carolina.

Heard May 6, 2008.

Decided June 9, 2008.

Rehearing Denied July 11, 2008.

confidentiality for purposes of disclosure of the on-the-record appearances.

386

Ronald W. Urban, Joe S. Dusenbury, Carol I. McMahan, all of South Carolina Department of Revenue, of Columbia, for Appellant.

Frank W. Cureton, of Haynsworth Sinkler Boyd, of Columbia, for Respondent.

Justice BEATTY.

In this property tax assessment case, the South Carolina Department of Revenue (the Department) appeals the circuit court's order which reversed the Administrative Law Court's (ALC) order. The circuit court held that Sonoco Products Company's (Sonoco's) office and order fulfillment center buildings are not contiguous to its plant site and, thus, should be assessed at a 6 percent ratio as opposed to a 10.5 percent ratio. This Court certified the case from the Court of Appeals. We reverse the decision of the circuit court.

## FACTUAL/PROCEDURAL HISTORY

Sonoco operates a manufacturing facility in Hartsville, South Carolina. At this location, Sonoco owns four buildings which serve as its international headquarters and order fulfillment center. The three corporate headquarters buildings are located across a public road, Novelty Avenue/Woodmill Street, and a railroad track from the majority of the manufacturing plant. Sonoco owns a fee simple interest in the road, which is subject to a public right-of-way for use as a public road in favor of the South Carolina Highway Department. Sonoco also owns the land traversed by the railroad tracks; however, Seaboard Coast Line Railroad has been granted a right-of-way and easement to a portion of the track. The buildings are

located between the manufacturing plant and the order fulfillment center. The order fulfillment center, or customer service center, is located across Novelty Avenue, the railroad tracks, and Calhoun Street from the manufacturing plant. There are no intervening landowners between the manufacturing plant and the buildings at issue.

Of the three buildings comprising the corporate headquarters, two of the buildings were built in 1969 and 1978, respectively. The third building was constructed in 1989. The 1969 and 1978 buildings were used in support of the manufacturing facility and, at the time of their construction, were assessed at a 10.5 percent ratio as manufacturing-related property. The 1989 building, the corporate headquarters, was attached to the two other administrative buildings and was also assessed at a 10.5 percent ratio as manufacturing-related property. The order fulfillment center was built in 1997 and was also assessed at a 10.5 percent ratio.[1]

On July 2, 1997, Sonoco filed a written protest with the Department in which it submitted that the Office Buildings were not contiguous to its plant site because they were separated from the plant site by a public street and, thus, should be assessed at a 6 percent ratio rather than 10.5 percent. In its protest, Sonoco requested a tax refund for the property tax years of 1997 and 1998.

On September 23, 2003, the Department issued its final agency determination. In its report, the Department stated "[t]he sole issue for the [the Department's] determination is whether railroads and public streets destroy contiguity for purposes of S.C.Code Ann. Section 12–43–220 (2000)."[2] The Department rejected Sonoco's argument and denied its re-

---

**1.** Both parties stipulated that the buildings constitute "office buildings" as defined in section 12–43–220(a) of the South Carolina Code. S.C.Code Ann. § 12–43–220(a) (2000).

**2.** Section 12–43–220 provides in relevant part:

Except as otherwise provided, the ratio of assessment to value of property in each class shall be equal and uniform throughout the State. All property presently subject to ad valorem taxation shall be classified and assessed as follows:

(a) All real and personal property owned by or leased to manufacturers and utilities and used by the manufacturer or utility in the

quest for a refund. In reaching this decision, the Department found our applicable state statutes and regulations "indicate that intervening roads, rights-of-way, and railroad tracks do not destroy contiguity." In reviewing these statutes and regulations, the Department believed the Legislature has "repeatedly expressed its reluctance to destroy contiguity when two tracts are separated by a street, railroad track, or other public way." In addition to this statutory support, the Department also relied upon several appellate court decisions to find that Sonoco's "headquarters facility is contiguous to the plant site and should remain assessed for property tax purposes at 10½ %."

---

conduct of the business must be taxed on an assessment equal to ten and one-half percent of the fair market value of the property.
* * *
Real property owned by or leased to a manufacturer and used primarily as an *office building* is not considered used by a manufacturer in the conduct of the business of the manufacturer for purposes of classification of property under item (a) of this section *if the office building is not located on the premises of or **contiguous** to the plant site of the manufacturer.*
* * *
(e) All other real property not herein provided for shall be taxed on an assessment equal to six percent of the fair market value of such property.
S.C.Code Ann. § 12–43–220(a), (e) (2000) (emphasis added). In 1984, the Legislature amended section 12–43–220(a) to give manufacturers a tax reduction. The amendment provided that an office building of a manufacturer would not be considered "used by a manufacturer in the conduct of the business," and thus subject to the 6 percent assessment ratio, if the office building was "not located on the premises of or contiguous to the plant site" of the manufacturer. Act No. 419, 1984 S.C. Acts 1850.
A "plant site" is defined as:
    A plant site shall consist of all land *contiguous* to a plant which is related to the overall manufacturing operation. It shall include all land on which personal property is located including but not limited to the following: parking lots, manufacturing areas, buildings, landscaping, piping, *railroad siding*, docking, water sheds, ditching, pollution control facilities, pumping stations, wells, *roads*, water tanks, areas for ingress and egress, water storage facilities, and all other lands directly related to manufacturing. When possible, a plant site will be one *contiguous* parcel using legal and or natural boundaries.
27 S.C. Regs. 117–124.4 (1976) (emphasis added). Effective June 25, 2004, this regulation was repealed and reorganized and is now cited as 117–1700.7. The text of the regulation, however, has not been amended. Therefore, we cite to the version of the regulation that was in effect throughout the proceedings of this appeal.

In response to the Department's decision, Sonoco contested the final agency determination before the ALC. Prior to the hearing, the parties entered into a stipulation of facts. Based on these stipulations and the evidence presented at the hearing, the ALC affirmed the Department's determination and held that "Sonoco's headquarters office buildings and order fulfillment center are contiguous to the plant site and all property taxes computed thereon should be calculated using a 10½ % assessment ratio."

Sonoco appealed the ALC's decision to the circuit court. After hearing oral arguments, the circuit court issued its written order reversing the ALC and holding that Sonoco's office buildings are entitled to a 6 percent assessment ratio. In reaching this decision, the circuit court specifically found that "[w]hen the taxpayer's office building and plant site are separated by a public road, there is a clearly defined, intervening land area with legal boundaries demarcating the two land areas, and the plant site and the office building may be readily distinguished."

The Department appealed the circuit court's order to the Court of Appeals. This Court certified the appeal from the Court of Appeals. The parties stipulate the amount at issue before this Court is a refund of $866,580.44 with interest, plus an additional refund reflecting a 6 percent assessment ratio on the land surrounding the buildings.

## DISCUSSION

The Department raises three issues with multiple subparts; however, we believe the sole issue is whether the circuit court erred in finding Sonoco's office buildings, which are separated from its manufacturing plant by a public road and railroad, are not contiguous to the plant site.

In reaching its decision that the presence of a public road between Sonoco's plant site and office buildings destroyed contiguity, the circuit court found the ALC erred in the following respects: (1) in construing section 12–43–220(a) to mean that a manufacturer's office buildings and its plant site on opposite sides of a public right-of-way are "contiguous" when the manufacturer owns the fee simple interest underlying the public right-of-way; and (2) in interpreting section 12–

43–220(a) by ruling that contiguity "jumps" over a public right-of-way.

For several reasons, we find the circuit court's analysis was erroneous and the ALC correctly decided the issue. The ultimate decision in this case is dependent upon the Court's determination of the term "contiguous" within the meaning of section 12–43–220(a).

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *Broadhurst v. City of Myrtle Beach Election Comm'n,* 342 S.C. 373, 380, 537 S.E.2d 543, 546 (2000). The court should give words their plain and ordinary meaning, without resort to subtle or forced construction to limit or expand the statute's operation. *Sloan v. S.C. Bd. of Physical Therapy Exam'rs,* 370 S.C. 452, 469, 636 S.E.2d 598, 607 (2006). "We will reject a statutory interpretation when to accept it would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention." *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000).

As the parties and the presiding courts recognized, the specific statute at issue, section 12–43–220(a), does not define the term contiguous. Therefore, we have tried to glean an appropriate definition by reviewing secondary sources, our state statutes, and our state appellate decisions which deal with the concept of contiguity.

In terms of secondary sources, "contiguous" commonly means, "being in actual contact: touching along a boundary or at a point; adjacent; next or near in time or sequence." *Webster's New Collegiate Dictionary* 243 (1981). In the legal field, it has been defined as: "[i]n close proximity; neighboring; adjoining; near in succession; in actual close contact; touching at a point or along a boundary; bounded by or traversed by." *Black's Law Dictionary* 290 (5th ed.1979).

Although not directly on point, other South Carolina statutes are instructive in determining how the Legislature views this term. Clearly, when the Legislature promulgated section 12–43–220(a) it was aware of the use of the term "contiguous" in other statutory schemes. Thus, we believe a review of these statutes provides guidance in the instant case. *See* S.C.Code Ann. § 12–43–232(2) (2000) ("For tracts not used to grow timber as provided in item (1) of this section, the tract must be ten acres or more. Nontimberland tracts of less than ten acres which are contiguous to other such tracts which, when added together, meet the minimum acreage requirement, are treated as a qualifying tract. For purposes of this item (2) only, *contiguous tracts include tracts with identical owners of record separated by a dedicated highway, street, or road or separated by any other public way.*") (emphasis added); *see also* S.C.Code Ann. § 5–3–305 (2004) ("For purposes of this chapter, contiguous means property which is adjacent to a municipality and shares a continuous border. Contiguity is not established by a road, waterway, right-of-way, easement, railroad track, marshland, or utility line which connects one property to another; *however, if the connecting road, waterway, easement, railroad track, marshland, or utility line intervenes between two properties, which but for the intervening connector would be adjacent and share a continuous border, the intervening connector does **not** destroy contiguity.*") (emphasis added); S.C.Code Ann. § 34–28–160(3) (1987) (outlining financial institutions and stating: "With prior written notification to the Board, and in order to relieve some of the burdens on the public caused by congestion of public streets, roadways, and parking facilities, promote safety of pedestrians on public ways, or otherwise serve the needs or convenience of the public, an association may operate facilities providing services to customers. It is not necessary that any facility be a part of, or physically connected to, the main structure of the home office or branch if the facility is located on the property on which the main structure of the home office or branch is situated or on property contiguous thereto. *Property which is separated from the property on which the main structure of the home office or branch is situated only by a street and one or more walkways and alleyways is, for*

*the purpose of this subsection, considered* **contiguous.***"*) (emphasis added).

We believe the text of these statutes reflects an intention by the Legislature to broadly construe and apply the term "contiguous." In each of the cited statutes, contiguity was not destroyed or defeated by an intervening dedicated road or public right-of-way.

Additionally, the preference for a broad construction is illustrated by the text of the Department's regulation which defines "plant site," and states in pertinent part, *"[w]hen possible,* a plant site will be one contiguous parcel using legal and or natural boundaries." 27 S.C. Regs. 117–124.4 (1976) (emphasis added). We believe the above-quoted text indicates a predilection for sections of a plant site to be contiguous unless there is a clear obstruction or barrier which operates to disconnect parcels of land.

Our state appellate decisions also appear to broadly interpret the term contiguous. *See, e.g., Kizer v. Clark,* 360 S.C. 86, 90–91, 600 S.E.2d 529, 532 (2004) (citing section 5–1–30 of the South Carolina Code and recognizing that marshlands and creeks do not defeat towns contiguity for annexation purposes); *Mosteller v. County of Lexington,* 336 S.C. 360, 364–65, 520 S.E.2d 620, 623 (1999) (explaining, in a constitutional taking of property case, the term "contiguous" and stating " '[a]but' means to be contiguous ... [h]owever, abut does not always mean there must be actual contact;" "property may still be deemed to abut a road when there is some intervening, natural barrier like a stream or river"); *Glaze v. Grooms,* 324 S.C. 249, 253, 478 S.E.2d 841, 844 (1996) (recognizing basic proposition that "contiguity is not destroyed by water or marshlands which separate parcels of highland," but finding town lacked requisite contiguity to incorporate where waters/wetlands it sought to use to establish contiguity had already been annexed by another municipality); *Bryant v. City of Charleston,* 295 S.C. 408, 411, 368 S.E.2d 899, 901 (1988) (affording "contiguous" its ordinary meaning of "touching," within context of annexation to municipal corporation pursuant to section 5–3–150 of the South Carolina Code, and finding code section only required annexed area to share a common boundary with annexing municipality; holding "conti-

guity is not destroyed by water or marshland within either the annexing municipalitys existing boundaries or those of the property to be annexed merely because it separates the parcels of highland involved"); *Tovey v. City of Charleston*, 237 S.C. 475, 485, 117 S.E.2d 872, 876–77 (1961) (finding, in municipal annexation case, presence of Ashley River did not destroy contiguity between boundaries of two areas at issue); *Beaufort County v. Trask*, 349 S.C. 522, 527, 563 S.E.2d 660, 662 (Ct.App.2002) (holding, in annexation case, that presence of state-owned river between city and property did not defeat contiguity); *St. Andrews Pub. Serv. Dist. v. City Council of the City of Charleston*, 339 S.C. 320, 324–25, 529 S.E.2d 64, 66 (Ct.App.2000) ("To achieve contiguity, actual physical touching of the properties is not required. The Supreme Court has rejected an argument that the annexed parcels must have the additional qualifications of unity, substantial physical touching, or a common boundary. However, the Supreme Court has never held that non-adjacent properties not incidentally separated by a road, railway, or waterway are in fact contiguous.") (citation omitted), *reversed by*, 349 S.C. 602, 605–06, 564 S.E.2d 647, 649 (2002) (reversing Court of Appeals on issue of standing, but affirming general contiguity analysis in municipal annexation case); *Pinckney v. City of Beaufort*, 296 S.C. 142, 147, 370 S.E.2d 909, 912 (Ct.App.1988) (holding, in case involving annexation of land by city, the fact that access from city to annexed area required crossing a bridge and traversing of unannexed property in the county did not preclude finding of requisite contiguity).

As evidenced in the above-cited cases, our appellate courts have repeatedly found an intervening boundary that is neither a barrier nor an obstruction does not operate to destroy contiguity. Stated another way, an incidental separation between properties should not serve to negate otherwise contiguous property.

To the extent Sonoco attempts to distinguish the above-listed cases on the ground they deal with annexation and not taxation, we find its argument unavailing. Although Sonoco is correct that the cases involve annexation, they nevertheless establish the generally applicable proposition that a right-of-way or easement merely provides a means of access over a road and does not convey property ownership which would

operate to defeat contiguity. *See Douglas v. Med. Investors, Inc.,* 256 S.C. 440, 445, 182 S.E.2d 720, 722 (1971) ("An easement is a right which one person has to use the land of another for a specific purpose and gives no title to the land on which the servitude is imposed. An easement is therefore not an estate in lands in the usual sense.") (citations omitted); *Hoogenboom v. City of Beaufort,* 315 S.C. 306, 315, 433 S.E.2d 875, 882 (Ct.App.1992) ("Ordinarily, when a municipality lays out a street over privately owned property, it acquires only a right of way over the property, not fee simple title to it."); *see also City of Augusta v. Allen,* 438 A.2d 472, 478 (Me.1981) (finding fact that property was of the same character and usage, was contiguous but for a public road running through it, had a single owner and was acquired and conveyed by single metes and bounds description showed assessors could reasonably tax it as a single parcel); *Reiling v. City of Eagan,* 664 N.W.2d 403, 408 (Minn.Ct.App.2003) (recognizing synonymy of terms "abutting" and "contiguous" and concluding contiguity is not affected by the presence of a public thoroughfare for purposes of city's redevelopment tax-increment financing district); *Appeal of Susquehanna Collieries Co.,* 335 Pa. 337, 6 A.2d 831, 832 (1939) (stating that, where "contiguous tracts of land, separately assessed in the hands of different owners, are acquired by a single owner and used in the conduct of a single operation, they need not be assessed separately, but may be consolidated in a single assessment"); *see generally* M.C. Dransfield, Annotation, *Different Parts or Parcels of Land in Same Ownership As Single Unit or Separate Units for Tax Assessment Purposes,* 133 A.L.R. 524 (1941 & Supp.2008) (establishing general proposition that where lots or lands are contiguous and in one ownership they may be assessed as a unit).

Furthermore, we disagree with Sonoco's assertion that the annexation cases are inapposite because "in all of those cases, the waterway was also part of the annexing municipality." Sonoco's contention actually weakens its overall argument. By the same token that a waterway is part of the annexing municipality, Sonoco is the fee simple owner of the road at issue and the adjoining property. As previously stated, the right-of-way does not diminish Sonoco's ownership of this

road. Thus, as in the annexation case, there is no intervening landowner in this case that would destroy contiguity.

Applying the foregoing to the facts of the instant case, we hold the ALC was correct in finding that the Office Buildings are contiguous to Sonocos plant site. First, there is no barrier or well-defined land area that separates the Office Buildings from the manufacturing plant. *See Tovey*, 237 S.C. at 485, 117 S.E.2d at 877 (stating in municipal annexation case that "[t]he river does not constitute a barrier to complete amalgamation of the communities upon its opposite banks"). Secondly, there are no intervening landowners. As the parties stipulated, Sonoco owns a fee simple interest in the roads and railroad that separates the Office Buildings from the manufacturing plant. Finally, the presence of the public right-of-way and easement for Novelty Avenue and the railroad should not operate to defeat viewing the plant site as a unified area. Significantly, the circuit court recognized this fact when it stated, "[c]ertain portions of the Plant Site are located across additional public streets (for example, the Spiral Division and the Bleachery are located across the Patrick Highway [also known as Miller Avenue] and the Machine Manufacturing building is located across Third Avenue)." We would also note that plant employee and tractor trailer parking are located on the same side of Novelty Avenue as the Office Buildings. Thus, Sonocos plant site is not limited to the immediate area surrounding the manufacturing plant, but instead, expands significantly beyond the confines of the plant over the adjoining roads.

As previously stated the Legislature, our state appellate courts, and the Department each have broadly construed the term "contiguous." However, even under Sonocos narrow interpretation, which requires an actual "touching" of the parcels to establish contiguity, that definition would be satisfied in the instant case. Because Sonoco owns the fee simple interest in the property and there are no intervening landowners, the parcels on which the Office Buildings are located are "touching" the plant site and, thus, are contiguous. Furthermore, although the roads at issue allow for public use, which Sonoco contends defeats contiguity, the primary purpose of these roads is to provide ingress and egress to the manufacturing plant. Obviously, as Sonoco points out, there is no actual

manufacturing on the road at issue. However, the transportation of raw materials and the finished product sufficiently relates to manufacturing. Thus, the roads are "directly related to manufacturing," as required by Regulation 117–124.4 to be considered part of the "plant site." Additionally, the Office Buildings themselves are not separate entities from the manufacturing plant. Arguably, the Office Buildings and the manufacturing plant are inextricably linked by the fact that the items produced in the manufacturing plant would not be distributed but for the operations in these administrative and customer service buildings. To find that a road owned by a manufacturer on its plant site, but used by the public, defeated contiguity under section 12–43–220, we believe would be in contravention of what the Legislature intended.

The Legislature amended section 12–43–220 to provide for a reduced 6 percent tax assessment ratio in order give a tax break to manufacturers for office buildings that are used or leased for purposes clearly unrelated to manufacturing. Illustrative of this point is the testimony of one of the Departments employees, Charles McLean. McLean testified before the ALC that Sonoco has several offices in Hartsville that are assessed at the lower 6 percent ratio. These buildings include an office leased by a law firm, a YMCA, and an industrial property. McLean testified these buildings were at least one-half mile away from Sonocos manufacturing plant and there were several intervening landowners between the plant and these office buildings.

In order to effectuate the intent of the Legislature, we find the word "contiguous" within the context of section 12–43–220 should be broadly construed. To read it narrowly would provide manufacturers a tax reduction which is neither warranted nor intended by the Legislature. We do not believe the Legislature contemplated that a manufacturer could defeat contiguity in order to receive the reduced tax assessment ratio merely by granting a right-of-way for a road located on its plant site. Because Sonoco owns the property which separates the office buildings from the plant site, we do not believe the presence of the public right-of-way over Novelty Avenue/Woodmill Street or the easement for the railroad operates to destroy contiguity. Thus, we believe the circuit court erred in reversing the order of the ALC.

Accordingly, the decision of the circuit court is **REVERSED.**

**TOAL, C.J., MOORE, WALLER** and **PLEICONES, JJ.,** concur.